*166 Tayior, Chief-Justice,
dissentiente. — This case presents, for the first time, the naked question, whether a ven- . dor,making a deedand delivering possessionto thevendee, retains a lien on the land for the purchase- money. It may now be considered as the established law of a Court of Equity, in England, that where the vendor conveys his estate to the vendee, without receiving all, or any part of the purchase-money, he has,as against the vendee and his heir, and all claiming as volunteers, or purchasers for a valuable consideration with notice, a lien upon the estate for the whole, or such part of the purchase-money, as was not paid ; and this, although the consideration is on the face of the instrument, expressed to be paid, and a receipt endorsed. Upon this general rule, there is a concurrence among the authorities, though upon many points arising from the complicated system of Equity, which has been built upon it, there is considerable diversity of opinion among the most eminent Judges $ as, for example, what kind of security received in payment amounts to a waiver of the lien. Nairn v. Prowse (6 Vesey 752.) Macreath v. Simmons (15 Vesey 341.)
It is not easy to ascertain at what period the doctrine was incorporated into the law ; but the first reported case to be found in the books, can scarcely be called ancient. It is certain, that the refinements and intricate deductions from the rule, have arisen since our revolution. The existence of the lien, as a general question, was argued so lately as 1785, and though the Chancellor gave a strong opinion in favor of it, yet he would not decide it, in consequence of one of bis predecessors having given an opinion that the vendors taking a bond, discharged the lien. Blackburn v. Gregson (1 Bro. Ch. Rep. 420.) It was again doubted in 1802, whether a vendor, who had taken the bond or note of the vendee for the purchase-money, retained his lien on the land. The question arose between a creditor, who claimed under an equitable mortgage, created by the deposit of a deed *167 and the vendor who bad taken a deposit of stock, to secure the payment of the purchase-money. The Court determined, that by taking the deposit of stock, he had waived his lien ; and the question between the creditor and vendor was not decided. (Nain v. Prowse.) Upon the whole, I think it may be satisfactorily gathered from the books, that the system was not so firmly established at the period of our revolution, as to require us to consider it as part of the Equity jurisprudence then in force in this State, and to render obligatory upon us, the subsequent adjudications which have arisen upon it.
It is said, there is a natural equity, that the vendor of land should retain a lien for the price of it; and there is some foundation for this equity, where the lauds cannot be sold for the debts of the purchaser. But where land is liable to be sold on execution, to the same extent with chattels — where it is the subject of daily transfer and tralfic, conveying a fee-simple estate in allodial right, (a thing of rare occurrence in England,) the equity is not stronger as to land, than as to chattels. Nor is it probable, that this doctrine would have been introduced in England, if the tenures there, and the process of execution, had been equally simple with those in this State. It is the policy of our law, and in harmony with our political institutions, that the right of aliening land, should be enjoyed by the owner, with unrestricted freedom; and that any person may safely give him credit, on the faith of an undisputed possession, and of a right, attested and authenticated by the public registry. The facility and security given to creditors, is perhaps more remarkably characteristic of the law of this State, than any other feature it possesses. All conveyances not recorded, and all secret trusts, are made void against them, as well as against subsequent purchasers without notice. But the security held out to creditors, would be hollow and unsound, if these latent trusts were permitted to rise up against Üieui. and defeat a title honestly acquired from *168 the apparent owner. The sound and wholesome doctrine is, if the vendor sells without receiving the price, and cannot trust to the solidity of the vendee, lot him create a lien upon the land, by taking a mortgage, and register it within the time now required by law. If it is understood, that a purchaser, after searching the Clerk’s office for judgments and executions, and the Register’s olfice'for incumbrances, and finding all clear there, must still take the title at the risk of some unrecorded equity —some inscrutable lien, a very serious obstacle will be opposed to the alienation of real estate.
I believe there are but few States in the Union, which have retained the British law as to executions against land. I know of but one, Virginia — though there may be others. There the principle prevails, that the vendor has a lien upon the land for the purchase-money ; and where the writ of fieri facias cannot reach land, there is a semblance of justice in the adoption of the principle. It also prevails in Ncw-York, where the fieri facias does reach land ; but in some of the States, under the like circumstances, the doctrine is partially, and in others, entirely rejected. In Pennsylvania, the vendor, parting with the legal estate, retains no equitable lien for the unpaid purchase-money; hut ho does retain it, if he parts only with the equitable title. (1 Yates 393.)
The question was brought before the Court of Chancery in South-Carolina, so lately as 1808, when it was distinctly adjudged by the Court, consisting of three Chancellors, that a vendob, selling lands and conveying them in fee, and taking a bond for the purchase-money, without taking a mortgage, has no implied lien on the land, so as to give him any preference over the creditors of the purchaser. Wragg v. Comptroller-General, (2 Dessaus. 509.)
For these reasons, I should have been of opinion, that the bill be dismissed ; but as the question had not been *169 before brought into discussion, I think it should be without costs. But as my brothers are of a different opinion, there must be a decree for Complainants.
Pau Curiam.
— Direct an account to be taken of the purchase-money unpaid.